OAO91 (Rev. 12/03) Criminal Complaint

**FILED**
CHARLOTTE, N. C.
JAN 4 2007
U. S. DISTRICT COURT
W. DIST. OF N. C.

# UNITED STATES DISTRICT COURT

Western DISTRICT OF North Carlina

UNITED STATES OF AMERICA
V.

Justin Kyle TRIPP
9808 Bonita Lane, Apt. #214
Charlotte, NC 28213

(Name and Address of Defendant)

CRIMINAL COMPLAINT

Case Number: 3:07mj 3

I, the undersigned complainant state that the following is true and correct to the best of my knowledge and belief. On or about 4/29/2006 (Date) in Mecklenburg County, in the Western District of North Carlina defendant(s) did,

(Track Statutory Language of Offense)
knowingly and intentionally possess with intent to distribute one or more controlled substances, that is, cocaine and marijuana, and during and in relation to a drug trafficking crime, that is, possession with intent to distribute controlled substances for which he may be prosecuted in a court of the United States, did knowingly and unlawfully use and carry one or more firearms, and in furtherance of such drug trafficking crime, did possess said one or more of said firearms,

in violation of Title  21 and 18  United States Code, Section(s)  841(a)(1) and 924(c) .

I further state that I am a(n)  FBI Gang Task Force Agent  and that this complaint is based on the following facts:
Official Title

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part of this complaint: ☒ Yes ☐ No

_____
Signature of Complainant

Timothy White, FBI Gang Task Force Agent
Printed Name of Complainant

Sworn to before me and signed in my presence,

January 4, 2007                    at    Charlotte        North Carolina
Date                                       City             State

Honorable Carl Horn, III    U.S. Magistrate
Name of Judge               Title of Judge

_____
Signature of Judge

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA

AFFIDAVIT

I, Timothy A. White, am employed as a police officer with the Charlotte-Mecklenburg Police Department, in Charlotte, North Carolina, Mecklenburg County, USA. I have been employed as a police officer for 10 years. I have been assigned to the FBI Safe Streets Gang Task Force as an officer since November of 2005 during which time I have conducted investigations involving subjects for Federal Firearms Law as well as violations of the North Carolina Controlled Substances Act. I was previously assigned as a patrol officer in the North Tryon Division of the Charlotte-Mecklenburg Police Department during which time I attended several schools regarding the investigation of subjects involved in the illegal sale of narcotics and firearms used in violent crimes as well as made arrests and conducted investigations of individuals involved in the sale of illegal drugs. As an officer with the FBI Safe Streets Gang Task Force I have conducted investigations in excess of 50 individuals for violations of the Federal Firearm Laws and Drug Conspiracy Laws. This affiant through personal knowledge, investigation, interviews, and conferring with other law enforcement officers obtained the following information regarding the investigation of **Justin Kyle TRIPP**:

On 04/29/2006 at 2108 hours, Off. C.R. Capps #2865 was working in a uniformed off-duty capacity at 230 E. WT Harris Blvd. when he heard a call for service go out for some type of armed subject on the 8300 block of Paces Oaks Blvd. in the Oak Pointe apartment complex. Off. Capps recognized this location due to having an active investigation involving illegal firearms and drugs on a subject named Justin Kyle TRIPP who was living at 8319 Paces Oaks Blvd. Apt. #822. Off. Capps monitored the call and as North Division officers were responding to the location, he heard dispatch upgrade the call to a Priority 1 (Emergency) Armed Robbery from Person call. The dispatcher stated that the caller had called from 8319 Paces Oaks Blvd. Apt. #822 and had stated that he was just robbed by 2 subjects that had entered his apartment, that there was a struggle, and that shots (gun shots) had been fired. The dispatcher stated that the 911 caller was breathing heavy and that the phone call had been disconnected. Since Off. Capps was a short distance away, the resident of 8319 Paces Oaks Blvd. Apt. #822 (Justin Kyle TRIPP) was the target of prosecution for one of his active investigations, and the reason for the investigation involved firearms, Off. Capps decided to respond to the call to assist North Division officers.

1

Off. Capps arrived at the Oak Pointe apartment complex and observed that the Charlotte Fire Department was on-scene and that a CMPD officer in a marked patrol car had already arrived. Off. Capps made contact with the officer, M.R. Farmer #1031, and advised him that he had been working off-duty down the street and that the reported victim was someone that he had been investigating for firearm and drug violations. Off. Capps followed Off. Farmer up a flight of stairs to the 2nd level and stood-by while he knocked on the door to Apt. 822. Off. Farmer advised that one of the firefighters had located a cocked .357 revolver on the floor outside of the apartment and that the weapon smelled as if it had recently been fired. Neither fire nor Medic personnel had gone into the apartment due to the gun being located. Off. Farmer knocked on the door several times and then opened the door to see if anyone was inside of the apartment. Due to the reported victim advising that he had been robbed by subjects who had entered his apartment, reporting that shots had been fired, and the discovery of the handgun (which had 2 spent (fired) casings in it and smelled as if it had been recently fired), Off. Farmer and Off. Capps decided to enter the apartment under exigent circumstances to see if anyone was injured in any way – in particular a victim of a shooting. They quickly scanned the interior of the apartment for injured parties and after not locating any they exited the apartment. While inside of the apartment searching for the victim of a shooting, Off. Capps observed large quantities of ammunition, firearms, and drug paraphernalia throughout the apartment. As they left the apartment, Medic advised that the victim, Justin Kyle TRIPP, was at 8001 Paces Oaks Blvd. Apt. #112. Off. Farmer and Off. Capps went over to Apt. #112 and observed Medic and Fire Department personnel speaking with Mr. TRIPP. He appeared intoxicated, was sweating, pale, and appeared to be incoherent to the emergency personnel attempting to speak with him and treat him. His back had several scrapes on it and his arm was skinned up. Medic stated that TRIPP had advised them that he had fallen down some stairs running away from the suspects. TRIPP advised Medic and police personnel that the suspects had kidnapped his girlfriend. Medic transported Mr. Tripp to the hospital and Off. Capps assisted North Division and Street Crime Task Force units in a search for the possible suspects of the robbery.

While on the perimeter of the search for the suspects, Sgt. B. Foley #1253 (North Division) – who was at the hospital with TRIPP - advised that Mr. TRIPP had informed him that the incident occurred inside of his apartment and that his girlfriend, Hannah Eve Fussell, had been there the entire time – including when the shots had been fired. Off. Capps walked back over to Tripp's apartment with Off. S.M. Martin #2258 and observed a female leaving from the apartment. Off. Capps recognized the female as TRIPP's girlfriend from his ongoing investigation and advised Off. Martin the same. Off. Capps also knew that the female had not been inside of the apartment when the initial search for a victim took place. Off. Martin spoke with the female, positively identified as Hannah Eve Fussell (DOB 02/06/1987), who advised that she stays with TRIPP in Apt. #822 and was unaware of what he was talking about as far as the home invasion and shots being fired. Ms. Fussell stated that she had been out to dinner with friends and

that she was unaware of any type of altercation at the apartment. Off. Martin obtained consent to search the apartment in an attempt to corroborate TRIPP's story as to the home invasion robbery with shots having been fired. Ms. Fussell opened the door with her key and let Off. Martin inside.

Off. Martin entered the apartment and returned moments later advising that she was going to obtain a search warrant for the premises due to an extensive amount of firearms inside of the residence, marijuana in plain view, and evidence consistent with selling marijuana (plastic baggies, scales, etc.) also being in plain view. Also observed was a bullet hole in a bedroom wall. Off. Capps then drove Off. Martin down to the LEC so she could type up the search warrant. Upon returning to the residence and executing the search warrant, officers recovered and seized 21.7 grams of cocaine, various prescription pain killers (not prescribed to TRIPP), 7.1 grams of marijuana, various items for weighing, packaging, and selling drugs, two 7.62 assault rifles, 2 pistols, a "sawed-off" shotgun (with a barrel measurement of 16 9/16" – which is less than the required barrel length of 18"), approximately 2,500 rounds of ammunition, and various other weapons, weapon components, and items relating to drug dealing to include but not limited to numerous Ziploc baggies, electronic scales, and other paraphernalia commonly associated with drug distribution, sale, and trafficking.

TRIPP, who had been transported back to the apartment complex after being released from the hospital, was being detained in the back of a patrol car and when the shotgun was located in TRIPP's truck, a silver 2005 Toyota Takoma pickup truck bearing NC Tag #TZZ2598 (VIN 5TETU62N95Z134171), he saw the recovery and spontaneously advised Off. J.D. Moran #2652 that he was just going to make another one (saw off the barrel to another shotgun). Recovered from TRIPP's pocket search incident to arrest before transport to the hospital was 1.8 grams of cocaine which TRIPP spontaneously advised was "no big deal" and that it was for "personal use". Earlier in the day, TRIPP advised Ms. Fussell that he could see a SWAT team in the woods and was "watching them" with a set of binoculars which were observed by officers on the deck to his apartment. (No SWAT team was ever outside of his apartment.) He also advised that there were spiders in his closet. A written statement was obtained from Ms. Fussell regarding her involvement with TRIPP and these earlier statements that he had made.

3

It was determined that TRIPP had possibly hallucinated the reported robbery and struggle with subjects. TRIPP is a self admitted user of illegal drugs and according to the property manager for the Oak Pointe Apartment Complex, TRIPP had come into the office earlier that same day advising that he had "been up all night partying", appeared "strung out", and in the days following the incident he had come into the apartment complex office and advised that he was going to get his guns back or would just get more.

Officer Timothy A. White #1873
FBI Safe Streets Gang Task Force
Charlotte-Mecklenburg Police Department

Sworn to and subscribed before me, this 4th day of January, 2007.

Honorable Carl Horn, III
UNITED STATES MAGISTRATE JUDGE